UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
KEITH SALVATORE LABELLA,

                   **MEMORANDUM & ORDER**
        Plaintiff,                07-CV-2330 (NGG) (LB)

-v-

FEDERAL BUREAU OF INVESTIGATION and
UNITED STATES DEPARTMENT OF JUSTICE,

        Defendants.
-------------------------------------------------------------------x
NICHOLAS G. GARAUFIS, United States District Judge.

This case arises from a Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, request by *pro se* Plaintiff Keith Salvatore Labella ("Labella") for the production of certain documents pertaining to him, to his mother, Angelina Labella, and to James T. Ramsey, III ("Ramsey") allegedly in the possession of Defendants the Federal Bureau of Investigation ("FBI") and the United States Department of Justice ("USDOJ") (collectively, "Defendants"). Currently before the court are Defendants' motion for summary judgment (Docket Entry # 18) and Labella's cross-motion for summary judgment (Docket Entry # 23).

Defendants argue in their motion that the searches they have conducted in response to Labella's FOIA requests were reasonable and adequate, see Rabin v. United States Dep't of State, 980 F. Supp. 116 (E.D.N.Y. 1997), and that they are therefore entitled to summary judgment. (Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("Def. Mem.") (Docket Entry # 19) at 2.) Labella argues that Defendants have failed to demonstrate that their searches were reasonable and adequate. First, he claims that Defendants should have used the National Name Check Program ("NNCP") to uncover documents

responsive to his request. (Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Pl. Mem.") (Docket Entry #24) at 3-7.) Second, Labella claims that Defendants have failed to describe in sufficient detail the searches that they performed, and therefore the court lacks a factual record sufficient to enable it to conclude that Defendants' searches were reasonable and adequate. Finally, Labella contends that Defendants have not explained "gross irregularities" in the treatment of his requests, particularly in the treatment of his first FOIA request, sent to FBI by letter dated June 9, 2005. (Pl. Mem. at 7-9.) As relief, Labella requests that the court order FBI to (1) perform searches using the NNCP on himself, Angelina Labella, and Ramsey; (2) respond to his June 9, 2005 FOIA request; and (3) more fully describe the searches they have performed. (Plaintiff's Cross-Motion (Docket Entry # 23) at 1.)

Based on the submissions presented by the parties, Defendants' motion is Granted and Labella's cross-motion is Denied.

I.  **FACTUAL BACKGROUND**

In order to understand Labella's objections to Defendants' treatment of his FOIA requests, it will be useful first to summarize FBI's records system and to describe the NNCP, which Labella claims FBI should have used in order to adequately respond to his FOIA requests.

    A.    <u>FBI's Records System</u>

FBI files all the information it acquires in the course of fulfilling its law enforcement function in its Central Records System ("CRS"). (Declaration of David M. Hardy ("Hardy Decl.") (Docket Entry # 9) ¶ 52.) Records in the CRS are maintained either at FBI Headquarters ("FBIHQ") or at one of FBI's 56 field offices. (Id.; see Second Declaration of David M. Hardy ("Hardy Decl. # 2") (Docket Entry # 21) ¶ 38.) The files in the CRS have been indexed to

facilitate searches, for if the files were not indexed they could fulfill only an archival, not an investigatory, function.[1] (Hardy Decl. ¶¶ 54, 57.) The "General" indices to the CRS "are the means by which FBI can determine what retrievable information, if any, FBI may have in its CRS files on a particular subject matter or individual." (Id. ¶ 57.)

The General indices contain two different types of entries. A "main" entry in the General indices references a file contained in the CRS whose subject is that main entry. A "reference" entry, also called a "cross-reference," references a file on a different subject that refers to or mentions the reference entry. (Id. ¶ 54.) For example, if FBI had a file devoted to the activities of Mickey Mouse, there would be a "Mickey Mouse" main entry in the General indices which would reference Mickey Mouse's file. If Mickey Mouse were also mentioned in FBI's file on Minnie Mouse, there might also be a "Mickey Mouse" reference entry in the General indices, which would reference Minnie Mouse's file.

B. The NNCP

The NNCP is an FBI program whose mission is to conduct name checks for "federal agencies, congressional committees, the federal judiciary, friendly foreign police and intelligence agencies, and state and local criminal justice agencies." (Id. ¶ 26.) The NNCP is also used by FBI to conduct name searches in support of its counter-intelligence, counter-terrorism, and homeland-security missions. (Id.) In response to requests, employees in FBI's NNCP section

---

[1] The evidence in the record suggests that FBI's file system is fundamentally different from file systems that are fully text-searchable, like Westlaw's repository of cases and statutes, which can be searched for any mention of a word or phrase. FBI can search through files only if they have been indexed, and then only for the terms in those files that have been included in the indices. (Id. ¶ 57.) See, however, the discussion of Labella's contention to the contrary, infra text at 4-5.

may conduct "both electronic and manual CRS searches" and then review and analyze potentially responsive documents. (Id. ¶ 32.) An NNCP search will identify all potentially responsive files referenced in main and reference entries of the General indices, at FBIHQ or at any FBI field office. (Id. ¶ 35.)

Labella claims that the scope of an NNCP search is actually much broader, and that an NNCP search can uncover a document containing a particular term even if there is no main or reference entry in the General indices connecting that term to such document. (Plaintiff's Response to Defendants' Statement of Material Facts as to Which No Genuine Issue Remains To Be Tried ("Pl. 56.1 Statement") (Docket Entry # 25) at 1.) In essence, Labella claims that the CRS is fully text-searchable, and that the NNCP is the mechanism for conducting full-text searches of the CRS. The evidence before the court, however, even when viewed in the light most favorable to Labella, see Boyd v. City of New York, 336 F.3d 72, 75 (2003), does not support Labella's claims.

> For example, the "FBI File Fact Sheet," cited by Labella, states that:
>
> The [NNCP] conducts a search of the FBI's Universal Index to identify **any** information contained in FBI records that may be associated with an individual. For the NNCP, a name is searched in a multitude of combinations and phonetic spellings to ensure all records are located. The NNCP also searches for both "main" and "cross reference" files. A main file is an entry that carries the name corresponding to the subject of a file while a cross reference is merely a mention of an individual contained in a file. (Pl. 56.1 Statement, Exhibit ("Ex.") A) (emphasis in original).

The phrase "any information," when considered alone, supports Labella's argument that the NNCP can conduct a full-text search of the CRS. However, when read in context, it is clear that the NNCP conducts only a search of the indices to the CRS: "The [NNCP] conducts a search of

4

the FBI's Universal Index . . ."[2] The remainder of the paragraph cited above confirms that the NNCP simply searches through both the main and cross-reference entries in the General indices to the CRS: "The NNCP also searches for both 'main' and 'cross reference' files."[3]

C. Labella's FOIA Requests

1. *Labella's First FOIA Request*

Labella submitted his first request for information to FBI on June 9, 2005. (Plaintiff's Affidavit in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment and in Support of Plaintiff's Cross-Motion ("Pl. Aff.") (Docket Entry # 25) ¶ 3.) The facts relating to Labella's June 9, 2005 request will be set forth in great detail because Labella's claim of "gross irregularities" in Defendants' treatment of his FOIA requests is in large part premised on Defendants' treatment of this request. (See Pl. Mem. at 7-9.)

Labella has not submitted to the court a copy of his June 9, 2005 request, which he appears to have in his possession,[4] although he has quoted from it extensively in his complaint. (See Complaint ("Complaint") (Docket Entry # 1) at 2-4.) Labella has, however, provided a letter dated June 14, 2005 from David Hardy, Section Chief of the Records Information Dissemination Section of the Records Management Division of FBI ("RIDS"), notifying Labella that his FOIA request was being returned to him because Labella had requested records

---

[2] The Universal Index is, the Defendants' declarations suggest, the automated subset of the General indices. (Hardy Decl. ¶¶ 55-56.)

[3] The NNCP Information Letter from the FBI's website, (Pl. 56.1 Statement, Ex. B), also fails to support Labella's claim that the NNCP can conduct a full-text search of the CRS.

[4] Labella states in his affidavit that he sent copies of his June 9, 2005 request to an attorney at USDOJ's Office of Information and Privacy on March 28, 2007 and to FBI on October 19, 2007. (Pl. Aff. ¶ 4.)

5

pertaining to individuals for whom he had not provided proof of death. (Pl. 56.1 Statement, Ex. E.) The letter informed Labella that proof of death was required in order to avoid an invasion of privacy and that, once Labella provided such proof, FBI would perform a search of its records in accordance with his request and advise him of the results. (Id.)

Labella swears that he provided a death certificate to FBI with his June 9, 2005 request. (Pl. Aff. ¶ 4.) He timely filed an administrative appeal of FBI's treatment of his June 9, 2005 request, which was received at USDOJ's Office of Information and Privacy ("OIP") on June 29, 2005. (Pl. 56.1 St, Ex. C). It appears that FBI never followed up on Labella's appeal.

FBI has conducted a thorough search of its files and has located a request which it believes may be Labella's June 9, 2005 request. (Hardy Decl. # 2 ¶ 6.) However, "[d]ue to a corruption in the computer file," FBI is presently unable to retrieve the request. (Id.) On or about October 19, 2007, after the commencement of this action, FBI invited Labella to fax its counsel a copy of his June 9, 2005 request. (Id. ¶ 8.) After carefully reviewing the request, "FBIHQ has determined that it seeks access to the same information, in substance," as Labella's subsequent FOIA requests, to which FBI has already responded. (Id. ¶¶ 9-10.)

   2. *Labella's August 1, 2006 FOIA Request*

By letter dated August 1, 2006, Labella submitted a request to FBIHQ requesting the production of all FBI records referring or relating to himself or to Angelina Labella. (Hardy Decl. ¶ 5 & Ex. A.) Labella included with his request a copy of Angelina Labella's death certificate. (Hardy Decl., Ex. A.) FBIHQ, by letters dated August 10, 2006 and August 15, 2006, informed Labella that a search of the main entries in the automated — and, with respect to Angelina Labella, also the manual — indices had failed to turn up any documents in the CRS at

6

FBIHQ responsive to Labella's request. (Hardy Decl. ¶¶ 7-8 & Exs. C & D.)

By letter dated August 21, 2006, Labella appealed FBIHQ's decision letters, asking for a more thorough search, namely, a "'cross-file search' which is called a [NNCP] search." (Hardy Decl. ¶ 9 & Ex. E.) On December 27, 2006, OIP remanded Labella's request for records referring or relating to himself and to Angelina Labella to the FBI for further searches, including cross-references. (Hardy Decl., Ex. H.)

Subsequently, FBIHQ again informed Labella that a search of the main entries at FBIHQ had failed to turn up any documents responsive to Labella's request. (Hardy Decl., Exhs. J & L.) Although OIP had remanded Labella's request to FBI for a search through the reference entries in the General Indices, it appears that FBI did not conduct such a search, and simply repeated the search through the main entries of the General Indices that it had previously conducted. (See id.)

Labella filed an appeal of FBI's treatment of his August 1, 2006 request, but his appeal was terminated without decision after the instant action was initiated. (Hardy Decl., Exhs. K, M, & P.)

   3. *Labella's September 25, 2006 FOIA Request*

By letter dated September 25, 2006, Labella submitted another request to FBIHQ requesting his FBI file, specifically, (1) an NNCP search for himself; (2) any memoranda relating to a meeting between Labella and two female FBI agents in April 1998; and (3) searches of the electronic, virtual, physical, and microphone surveillance databases at FBI's New York Field Office ("FBINY") and FBIHQ for material referring to Labella. (Hardy Decl. ¶ 21 & Ex. Q.)

By letter dated November 29, 2006, FBIHQ informed Labella that a search of the main entries in the automated and manual indices at FBIHQ had failed to turn up any documents

responsive to his requests. (Hardy Decl., Ex. S.) FBIHQ further informed Labella that "the only place your name appears is in the actual New York Field Office Internal documents" and that "should you desire a check of our field office files, it will be necessary for you to direct your request to the appropriate field office." (Id.)

Labella filed an appeal of FBI's treatment of his request, (Hardy Decl., Ex. U), but USDOJ OIP affirmed FBI's actions, noting that FBI had also conducted a search of its electronic surveillance database but had found no responsive records. (Hardy Decl., Ex. V.)

4.  *Labella's December 11, 2006 FOIA Request Regarding Angelina Labella*

By letter dated December 11, 2006, Labella submitted a request to FBIHQ requesting Angelina Labella's FBI file, specifically, (1) an NNCP search for Angelina Labella; (2) the production of any records at FBIHQ or FBINY referring or relating to Angelina Labella; and (3) searches of the electronic, virtual, physical, and microphone surveillance databases at FBIHQ and FBINY for material referring to Angelina Labella. (Hardy Decl. ¶ 28 & Ex. W.)

By letter dated December 21, 2006, FBIHQ informed Labella that a search of the main entries in the automated and manual indices at FBIHQ had failed to turn up any documents responsive to Labella's requests regarding Angelina Labella. (Hardy Decl., Ex. Y.) After Labella appealed FBIHQ's decision letter, (Hardy Decl., Ex. Z), DOJ OIP informed Labella that FBI had conducted another search of its indices, including cross references, and had failed to turn up any records responsive to Labella's request. (Hardy Decl., Ex. AA.)

5.  *Labella's December 11, 2006 FOIA Request Regarding Himself*

By letter dated December 11, 2006, Labella submitted a request to FBIHQ requesting all documents at FBIHQ supporting FBI's statement that "the only place your name appears is in the

8

actual New York Field Office internal documents." (Hardy Decl., Ex. BB.) By letter dated March 19, 2007, FBIHQ released 144 pages of documents responsive to Labella's request, after reviewing 168 pages that were responsive and applying FOIA's exemptions from withholding. (Hardy Decl., Ex. DD); see 5 U.S.C. § 552(b). These documents, along with two audio cassettes, were found by searching through the reference entries of the General indices for documents in FBINY. (Third Declaration of David M. Hardy ("Hardy Decl. # 3") (Docket Entry # 27) at 4.)

Labella filed an appeal of FBI's treatment of his FOIA request, but his appeal was terminated without decision after the instant action was initiated. (Hardy Decl., Exs. EE & GG.)

### 6. *Labella's December 11, 2006 FOIA Request Regarding Ramsey*

By letter dated December 11, 2006, Labella submitted a request to FBIHQ requesting Ramsey's FBI file, and specifically asking for (1) an NNCP search for Ramsey; (2) the production of any records at FBIHQ, FBINY, and FBI's Louisville, Kentucky Field Office ("FBIKY") referring or relating to Ramsey; (3) searches of the electronic, virtual, physical, and microphone surveillance databases at FBIHQ, FBINY, and FBIKY for material referring to Ramsey; and (4) any records pertaining to FBI's alleged involvement in Ramsey's death. (Hardy Decl., Ex. HH.)

By letter dated January 9, 2007, FBIHQ informed Labella that a search of the main entries in the automated indices at FBIHQ had failed to turn up any documents responsive to Labella's request. (Hardy Decl., Ex. JJ.) Labella filed an appeal of FBI's decision letter, but his appeal was terminated without decision after the instant action was initiated. (Hardy Decl., Exs. KK & MM.)

### 6. *Labella's March 26, 2007 FOIA Request to FBINY*

9

By letter dated March 26, 2007, Labella submitted a request to FBINY requesting his complete FBINY file. (Hardy Decl. ¶ 46 & Ex. NN.) By letter dated April 23, 2007, FBIHQ notified Labella that an "updated search of the indices of the Central Records System was conducted in response" to his March 26, 2007 letter, and that no additional responsive records were found. (Hardy Decl., Ex. OO.)

Labella filed an appeal of FBI's decision letter, but his appeal was terminated without decision after the instant action was initiated. (Hardy Decl., Exs. PP & RR.)

7. *Labella's Agreement with FBI*

On August 9, 2007, after the commencement of this action, Labella entered into an agreement with Defendants whereby Labella agreed to an extension of Defendants' deadline to answer his Complaint in exchange for FBI's commitment to complete a search of its electronic surveillance database and a cross-reference search of its CRS for documents maintained at FBIHQ and FBINY containing Labella's name. (Hardy Decl., Ex. SS.) This agreement specified that the FBI would not complete a search of its electronic surveillance database or a cross-reference search of its CRS for documents or information containing any name other than Labella's. (Id.)

8. *Defendants' Description of the Searches Undertaken Pursuant to Their August 9, 2007 Agreement with Labella*

After the August 9, 2007 agreement described above, "RIDS personnel conducted a main and cross-reference search of the automated indices to the CRS for responsive documents in FBIHQ and [FBINY]." (Hardy Decl. ¶ 62.) RIDS personnel searched for records including phonetic equivalents of the following names: "Labella, Keith Salvatore," "Labella, Keith S.,"

10

"Labella, Keith," "Labella, K. Salvatore," "Labella, K.S.," and "Labella, Salvatore." Also included were Labella's date of birth and his social security number. The search located no additional records responsive to Labella's request. (Id.) RIDS personnel also searched through the electronic surveillance database indices for records located in FBIHQ and FBINY, without finding any responsive documents. (Hardy Decl. ¶ 63.)

In addition, pursuant to a separate agreement with Labella, FBI also conducted similar searches for Angelina Labella (for records "which originated" in FBIHQ and FBINY) and for Ramsey (for records "which originated" in FBIHQ, FBINY, and FBIKY), using their names as well as other identifying information, like their social security numbers and birth dates, as search terms. (Hardy Decl. # 2 ¶ 17-23.) These searches did not turn up any responsive documents. (Id.)

David Hardy has sworn that the "searches that the FBI conducted in response to Labella's FOIA/PA requests were conducted in good faith . . . . The methods used to conduct such searches, and the scope of such searches, were fully consistent with FBI practices and procedures, with DOJ FOIA policy, and were methods that are reasonably designed to identify and locate responsive documents." (Hardy Decl. #2 ¶¶ 109.)

## II. DISCUSSION

In order to prevail on a motion for summary judgment in a FOIA case, the defending agency must show that "its search was adequate and that any withheld documents fall within an exemption to the FOIA." Carney v. United States Dep't of Justice, 19 F.3d 807, 812 (2d Cir. 1994). Labella does not challenge Defendants' withholding of documents pursuant to FOIA's withholding exemptions. (Pl. Mem. at 7.) Defendants need therefore only show that their search

11

for documents responsive to Labella's requests was reasonable and adequate.

In order to show that a search was adequate, an agency must show that it conducted a search "reasonably calculated to discover the requested documents." Grand Centr. P'ship, Inc. v. Cuomo, 166 F.3d 473, 489 (2d Cir. 1999). An agency may rely solely on affidavits or declarations in order to meet this burden. Carney, 19 F.3d at 812. These affidavits must, at a minimum, describe in reasonable detail the scope and method by which the search was conducted. Maynard v. C.I.A., 986 F.2d 547, 559 (1st Cir. 1993). Such affidavits, if sufficiently detailed, are accorded a presumption of good faith. Halpern v. F.B.I., 181 F.3d 279, 295 (2d Cir. 1999).

In order to avoid summary judgment and proceed to discovery once the defending agency has satisfied its burden, "the plaintiff must make a showing of bad faith on the part of the agency sufficient to impugn the agency's affidavits or declarations." Carney, 19 F.3d at 812.

Because Labella is proceeding *pro se*, the court has read his papers liberally, and has interpreted them "to raise the strongest arguments they suggest." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).

    A.    The Reasonableness of FBI's Search

To find documents relating to Labella or his mother, the FBI searched through the main and reference entries in the General indices to the CRS and its electronic surveillance database indices with respect to documents in FBIHQ and FBINY. To find documents relating to Ramsey, FBI conducted similar searches with respect to documents in FBIHQ, FBINY, and FBIKY. Searching through these indices is the method FBI itself uses to uncover material in its files, and David Hardy has attested that those searches were "reasonably designed to identify and locate

responsive documents." See supra text at 11.

Such searches would necessarily have uncovered documents responsive to most of Labella's other requests, including his September 25, 2006 request for memoranda relating to his April 1998 meeting with FBI agents, and his December 11, 2006 request for records relating to FBI's involvement in Ramsey's death, for any such memoranda or records would refer to Labella or Ramsey.[5] Although such searches would not have uncovered information responsive to Labella's request that FBI perform searches of its virtual, physical, and microphone surveillance databases, Labella has now abandoned his request for FBI to perform these searches. (See Plaintiff's Cross-Motion (Docket # 23) at 1.) The FBI has therefore conducted a search "reasonably calculated to discover" documents responsive to Labella's FOIA requests. See Cuomo, 166 F.3d at 489.

    1.    *FBI's Refusal to Perform NNCP Searches*

---

[5] The same holds true for the requests for information in Labella's June 9, 2005 request, which includes requests of the following nature:

> Any memoranda or other writing evincing any involvement by the FBI, directly or indirectly, in the applications of Keith Labella to The University of Pennsylvania Law School, Cornell Law School, UCLA Law School and/or Fordham Law School. . . .
>
> Any memoranda and writings, in the possession of the FBI, related to any friend, girlfriend, sexual companion, family member or acquaintance of Keith Labella in any way related to their involvement with him. . . .
>
> Any writing, memoranda or report involving a large-scale civil rights conspiracy and its investigation in which Keith Labella was named as a victim or part of a class of victims. Any such investigation in which Americans of European descent were targeted because of a family history of known or believed anti-Semitic statements, beliefs, or opinions which affected their education, families, social-life . . . (Complaint at 3.)

Labella argues that FBI's searches were not adequate and reasonable because FBI has refused to perform searches using the NNCP on himself, Angelina Labella, and Ramsey, which he claims would be more likely to result in the discovery of documents responsive to his FOIA requests than the searches FBI has performed to date. As described above, supra text at 4-5, Labella claims that if the FBI had used the NNCP, it would have found any FBI file that mentions himself, Angelina Labella, or Ramsey, even if such file were not referenced in his, Angelina Labella's, or Ramsey's main or reference entries in FBI's General indices (assuming that such entries existed). Labella, however, has failed to present evidence to support his claim; on the contrary, it appears that a search using the NNCP is simply a search of the main and reference entries of FBI's General indices, like that which has already been conducted in response to Labella's FOIA request. See supra text at 4-5, 11.

There is, however, one important difference between an NNCP search and the search the FBI has conducted in response to Labella's FOIA requests: Whereas the FBI has only searched for documents only in FBIHQ, FBINY, and FBIKY, an NNCP search will uncover documents at FBIHQ or at any of FBI's 56 field offices. See supra text at 3-4. Defendants argue that Labella's request for NNCP searches is an end-run around the FBI's FOIA regulations, which require that "[f]or records held by a field office of the [FBI] . . . you must write directly to that FBI . . . field office address, which can be found in most telephone books or by calling the component's central FOIA office." 28 C.F.R. § 16.3. (Reply Memorandum of Law in Support of Defendant's Motion for Summary Judgment and in Opposition to Plaintiff's Cross-Motion for Summary Judgment (Docket Entry # 26) at 13.) FOIA requires government agencies to make records available to persons making FOIA requests only if such requests are "made in accordance with published

rules stating the time, place, fees (if any), and procedures to be followed." 5 U.S.C. § 552(a)(3)(A). Labella argues, however, that the NNCP is a system of records actually located at FBIHQ, and that his request for an NNCP search was therefore properly directed to FBIHQ. (Plaintiff's Reply Memorandum of Law in Support of His Cross-Motion (Docket Entry # 28) at 2.) The evidence in the record, however, indicates that the NNCP is not a separate system of records located at FBIHQ. Instead, it is a program within FBI that conducts searches on behalf of other governmental bodies of all of FBI's records, including records that are physically stored in FBI's field offices. See supra text at 3-5.

FBI is free to conduct searches of documents in FBIHQ and all its field offices for other governmental bodies using the NNCP without waiving its right to insist that FOIA requests be submitted in compliance with its FOIA regulations and that requests for documents physically stored in its field offices be directed to those field offices. See 28 C.F.R. 16.3. FBI has therefore properly declined to conduct a search of the documents in all of its field offices in response to Labella's request for NNCP searches. If Labella wishes FBI to conduct searches for him of materials in its field offices, he must send FOIA requests directly to those field offices.

2. *Defendants' Descriptions of their Searches*

Labella also argues that Defendants have failed to reasonably describe the searches that FBI undertook in response to his FOIA requests. Labella claims that Defendants' affidavits describing their searches do not "address who searched, what records, the location(s) where the search took place, or how the search was conducted (scope and methodology)." (Pl. Mem. at 8.)

Defendants' affidavits, however, do provide sufficient detail of the scope and method by which their searches were conducted. See Maynard, 968 F.2d at 562-63 (declaration must

15

demonstrate that search was reasonably calculated to locate the requested information). Defendants have stated that they searched through the main and reference entries of the General indices and the electronic surveillance database indices. They have indicated that they used these indices to search for responsive documents in FBIHQ, FBINY, and, with respect to Ramsey, FBIKY. They have described how they found the responsive documents they have turned over in the reference entries of the General indices for the files in FBINY. They have also described which search terms they used, including various permutations of Labella's name and various other identifying information provided by Labella, including social security numbers and birth dates. See supra text at 10-11. As for Labella's demand that FBI specify who conducted these searches, FBI disclosed that RIDS personnel conducted the searches. (Hardy Decl. ¶ 62.) FBI is not required to disclose the actual identities of the personnel who conducted these searches. See Maynard, 986 F.2d at 563 (there is no "general requirement for an agency to disclose the identity and background of the actual persons who process FOIA requests").

Because Defendants have provided affidavits that show in sufficient detail that their searches were reasonable and adequate, Defendants have met their burden. See Carney, 19 F.3d at 812. In order to avoid summary judgment, Labella must therefore show that Defendants' searches were not undertaken in good faith. Id.

    B.    Labella's Claims of Bad Faith

Labella argues that FBI acted in bad faith by not notifying him that there were materials in FBINY responsive to his requests until after he had submitted his September 25, 2006 request,

even though those materials were also responsive to his earlier August 1, 2006 request.[6] (Pl. Mem. at 8.)

FBI FOIA regulations put FOIA requesters on notice that they must make requests for searches of documents located at FBI's field offices directly to those field offices. 28 C.F.R. 16.3. Therefore, a request directed to FBIHQ, or to any of FBI's field offices, requires the FBI to search for records only in that particular office. Sometimes, however, in response to a request directed to one office, a search for records in that office will produce a "clear and certain" indication that there are documents responsive to the request in another office. If the FBI can reasonably interpret the request to be one only for documents present in that office, the FBI can "reasonably infer that the requester already has those records, is seeking them through a separate request, or, for whatever reason, does not want them." Kowalczyk v. Dep't of Justice, 73 F.3d 386, 389 (D.C. Cir. 1996). On the other hand, if the requester "clearly states that he wants all agency records on a subject, *i.e.*, regardless of their location, but fails to direct the agency's attention to any particular office other than the one receiving the request, then the agency need pursue only a lead it cannot in good faith ignore, i.e., a lead that is both clear and certain." Id.; see Halpern v. F.B.I., 181 F.3d 279, 288 (2d Cir. 1999) (citing Kowalczyk, 73 F.3d at 389).

Labella's August 1, 2006 request, which was directed to FBIHQ, did not specifically put FBI on notice that Labella was seeking access to records in FBINY. Labella asked FBI for "all correspondence, memoranda, reports . . . in the possession or constructive possession of the FBI that refer or relate to Keith Salvatore Labella." Relying on 28 C.F.R. 16.3, FBI could reasonably

---

[6] These materials are also responsive to Labella's June 9, 2005 request; FBI's treatment of that request is discussed below. See infra text at 18.

have interpreted this request to be one for records in the possession of FBIHQ. FBI therefore acted properly by searching only in FBIHQ, and notifying Labella, as it did, that there were documents responsive to his request in FBINY, which he could then request from FBINY.

Labella further argues that, instead of simply notifying him in response to his September 25, 2006 request that there were documents responsive to his request in FBINY, FBI should have released those documents to him without waiting for him to make further requests. (Pl. Mem. at 8.) However, as described above, FBI reasonably interpreted Labella's request as one only for documents in FBIHQ and therefore had no duty under Kowalczyk to also provide him with documents in FBINY.

Labella also argues that FBI's failure to respond to his June 9, 2005 request and its failure to preserve that request in accordance with FBI FOIA regulations are indicative of bad faith. Labella, however, cannot overcome the presumption of good faith to which FBI's affidavit is entitled. Generally, as long as FBI puts forth a reasonably-detailed, plausible, and non-controverted explanation for any deviation from its procedures, the courts will not impute to it a bad faith motivation for its conduct. See Miller v. United States Dep't of State, 779 F.2d 1378, 1386 (8th Cir. 1985). Although it is true that FBI has a duty to preserve all FOIA requests it receives, see 28 C.F.R. 16.10 ("Each component shall preserve all correspondence pertaining to the requests that it receives under this subpart."), FBI has sworn that its inability to retrieve Labella's June 9, 2005 request is due to a computer glitch, see supra text at [6], and Labella has no evidence that FBI is not being truthful.

In addition, although Labella swears that he properly provided proof of death of Angelina Labella with his request, see supra text at [5], he has also introduced into evidence a letter from

FBI informing him that such proof was missing from his letter. Id. Labella's evidence here is plainly insufficient to establish that FBI acted in bad faith as, even if he could prove that he had mailed in proof of death for Angelina Labella, it would likely have been lost because FBI misplaced it, not because of any ulterior motive. See Perry v. Block, 684 F.2d 121, 129 (D.C. Cir. 1982) (circumstances surrounding significant delay in releasing documents "indicate neither artifice nor subterfuge but rather, at worst, administrative inefficiency").

In any case, upon review of Labella's June 9, 2005 FOIA request, as summarized in Labella's Complaint (Complaint at 2-4), the court concludes that FBI was correct to determine, see supra text at 6, that the searches it conducted in response to Labella's subsequent requests reasonably and adequately responded to Labella's June 9, 2005 FOIA request.

Labella has therefore failed to demonstrate that FBI acted in bad faith.

### III. CONCLUSION

Because Defendants' affidavits demonstrate that the FBI's searches were "reasonably calculated to discover the requested documents," see Cuomo, 166 F.3d at 489, and because Labella has failed to demonstrate that FBI acted in bad faith, Defendants' motion for summary judgment is GRANTED. Because Labella therefore cannot show that he is entitled to any further searches or any further declarations explaining the searches that FBI conducted in greater detail, his cross-motion for summary judgment is DENIED. The clerk is directed to close the case and to mail a copy of this order to Labella.

SO ORDERED.

Dated: May 8, 2008  /s Nicholas G. Garaufis
      Brooklyn, N.Y.  NICHOLAS G. GARAUFIS
                                                  United States District Judge